UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSHUA BEAN,

        Plaintiff,

        v.

NANCY MARTHAKIS, WILKS,
STEPHANIE RILEY, DOCTOR,
CHRISTINA CHICO, KIMBERLY
PFLUGHAUPT, DIANE THEWS,
KAREN J. FAGAN, TIFFANY TURNER,
JACQUELINE MONACO, TEAGAN
NELSON, ROXANNE LISTON,
IRASEMA A. HERNANDEZ, BETTY
BOGGS, RON NEAL, and KRISTEN
DAUSS,

        Defendants.

CAUSE NO. 3:24-CV-142-DRL-MGG

OPINION AND ORDER

Joshua Bean, a prisoner without a lawyer, filed a complaint and a motion seeking injunctive relief. ECF 1 and 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Bean alleges he is being denied adequate medical treatment for a heart condition that began after he received a COVID vaccine booster in July 2022. ECF 1 ¶ 7. This is not the first time he has raised these claims. In *Bean v. Marthakis*, 3:23-cv-747 (N.D. Ind. filed August 1, 2023), he sued five of these same defendants based on events that happened from July 21, 2022, to February 5, 2023. The court screened that complaint and found it did not state a claim. Mr. Bean voluntarily dismissed that case. Almost a year later, he filed this case.

Here, he sues fourteen medical providers and two high-ranking Indiana Department of Correction officials. To prevail on an Eighth Amendment claim for a denial of medical treatment, Mr. Bean must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate

that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). It is not enough that a medical professional be mistaken in his or her judgment. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To state a claim, an inmate must plausibly allege the treatment decision was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

   A. *Nancy B. Marthakis, MD*.

   Dr. Marthakis was one of the previously sued defendants whom the court found Mr. Bean did not state a claim based on events through February 5, 2023. Because his prior lawsuit was dismissed without prejudice, the court will review all the allegations against Dr. Marthakis.

   With this complaint, Mr. Bean provided 137 pages of medical records. ECF 1-1. They show he was seen for chest pain on August 12, 2022. *Id.* at 1. He was examined by a nurse using the protocol for Emergency Nursing Chest Pain, which included a chest and cardiac exam—all of which were normal. *Id.* at 2. He was given an EKG that was also normal. *Id.* at 4. On August 5, 2022, the results of an extensive blood test were all normal except for slightly elevated LDL cholesterol. *Id.* at 6-7. His LDL cholesterol was 117 – which is near optimal. *See Lipid Panel*, John Hopkins Medicine.[1]

   On September 6, 2022, Mr. Bean was seen by an Advanced Practice Nurse (APN) for complaints of ongoing chest pain and Xanthomas. ECF 1-1 at 8. Xanthomas is a skin condition that can be caused by high blood cholesterol levels. *Xanthoma*, Mount Sinai

---

[1] *See* https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/lipid-panel#:~:text=Near%20optimal%3A%20100%20to%20129,190%20mg%2FdL%20and%20higher.

Hospital.[2] The APN performed a cardiovascular exam that was normal. ECF 1-1 at 10. She ordered another EKG, more lab work, and a chest x-ray. *Id*. All the test results were normal, except for his alkaline phosphatase which very slightly low, but his prior test for it was normal. *Id*. at 12, 13, 14, and 17.

On October 11, 2022, Mr. Bean saw Dr. Marthakis.[3] ECF 1 ¶ 13. He alleges she was deliberately indifferent because she prescribed prednisone, a steroid, for his heart condition. *Id*. However, none of his test results showed he had a heart condition. He complained of chest pain and prednisone "may relieve the inflammation, pain and discomfort of many different diseases and conditions." *Prednisone and other corticosteroids*, Mayo Clinic.[4] The complaint does not plausibly allege Dr. Marthakis was deliberately indifferent when she prescribed prednisone.

Mr. Bean alleges Dr. Marthakis was deliberately indifferent to his chest pain during an appointment on October 24, 2022. ECF 1 ¶ 14. The medical record for that visit indicates the reason for the visit was because Mr. Bean "wants fiber [and] reported he used to buy the psyllium fiber powder from OTC/commissary and has not been able to orde[r] it." ECF 1-1 at 18. After the appointment, Mr. Bean filed a grievance and was told "Provider did not order fiber . . . you were educated on ordering foods high in fiber off

---

[2] *See* https://www.mountsinai.org/health-library/diseases-conditions/xanthoma#:~:text=Xanthomas%20are%20lesions%20on%20the,frequently%20yellowish%2Dcolored%20skin%20lesions.

[3] The complaint says this meeting occurred on October 11, 2023, but the medical records and the chronological order of the complaint clearly show this was a scrivener's error and the meeting was on that date in 2022. *See* ECF 1-1 at 15.

[4] *See* https://www.mayoclinic.org/steroids/art-20045692.

of Commissary." *Bean v. Marthakis*, 3:23-cv-747, ECF 1-1 at 1. Before the appointment, on October 19, 2022, Mr. Bean put in a request for healthcare related to chest pain. ECF 1-1 at 20. However, the October 24, 2024, visit was not related to that request for health care – it was an "Established patient" visit. ECF 1-1 at 18. It was not a sick call visit. *See* ECF 1-1 at 1, 72, and 131 (medical records showing "sick visit" or "sick call"). Based on the medical records provided, the complaint does not plausibly allege Dr. Marthakis was deliberately indifferent during the October 24, 2022, visit.

On November 23, 2022, a nurse practitioner saw him for chest pain and ordered an echocardiogram. ECF 1-1 at 21-23. On December 29, 2022, Dr. Marthakis discussed his chest pain and the results of that test. *Id*. at 26-28. Mr. Bean alleges she was deliberately indifferent because she prescribed him Crestor (the generic version is called rosuvastatin) and refused to conduct further tests. ECF 1 at ¶ 15. He asserts rosuvastatin only lowers cholesterol and would do nothing to treat his pain, but "[l]owering your blood level of cholesterol and fats with rosuvastatin has been shown to prevent heart disease, angina (chest pain), strokes, and heart attacks." *Rosuvastatin*, National Library of Medicine (emphasis added).[5] Dr. Marthakis also ordered lipid testing during this visit. The complaint does not plausibly allege Dr. Marthakis was deliberately indifferent when she prescribed rosuvastatin and lipid testing during this visit.

On July 18, 2023, a nurse saw Mr. Bean for chest pain and dizziness. ECF 1-1 at 44-45. The nurse called Dr. Marthakis. *Id*. at 45. Mr. Bean alleges Dr. Marthakis was

---

[5] *See* https://medlineplus.gov/druginfo/meds/a603033.html.

deliberately indifferent because she did not immediately refer him to a cardiologist. ECF 1 ¶ 16. The medical record shows Mr. Bean was stable. ECF 1-1 at 45. He told the nurse he was able to relieve the pain by eating high protein foods. *Id*. He had already received extensive cardiac evaluations. *Id*. at 4, 6-7, 10, 12-14, 25, and 40. A referral to a cardiologist had recently been denied. *Id*. at 36 and 41. Mr. Bean was scheduled for a follow up visit with his provider. *Id*. at 45. The complaint does not plausibly allege Dr. Marthakis was deliberately indifferent for not immediately referring him to a cardiologist at that visit.

On July 20, 2023, Mr. Bean was found unresponsive in his cell. ECF 1 ¶ 17. After guards found him, he got up and walked to medical. ECF 1-1 at 47. Mr. Bean alleges it was deliberately indifferent for Dr. Marthakis to refer him to Dr. Martin because his chest pain and dizziness might be caused by his mental health medications. He argues he had those symptoms before he began taking bupropion. However, chest pain, dizziness and loss of consciousness are side effects and/or symptoms of bupropion overdose. *Bupropion*, National Library of Medicine.[6] Mr. Bean wanted to be given immediate heart treatment, but his vital signs were normal and he was scheduled to see Dr. Martin later the same day. ECF 1-1 at 46-47. There is no indication Mr. Bean was in immediate need of medical treatment. The complaint does not plausibly allege Dr. Marthakis was deliberately indifferent for referring him to Dr. Martin to reevaluate his mental health medications.

---

[6] *See* https://medlineplus.gov/druginfo/meds/a695033.html#side-effects.

Mr. Bean alleges Dr. Marthakis was deliberately indifferent because she did not order an EKG or other testing on August 7, 2023, when he reported chest pain and other heart related symptoms to a nurse. ECF 1 ¶ 18. The complaint includes many medical records, but none for that date. Included are two EKGs from shortly before: one on July 25, 2023, and another on July 26, 2023. ECF 1-1 at 48 and 53. Also included is an EKG and an echocardiogram performed the next day on August 8, 2023. *Id*. at 70-71. Prisoners are "not entitled to demand specific care[, nor are they] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The complaint does not plausibly allege Dr. Marthakis was deliberately indifferent for waiting a day to have additional testing performed.

Mr. Bean alleges Dr. Marthakis was deliberately indifferent because she did not provide him with treatment on September 7, 2023, after he told her that he was having chest pain and other heart related symptoms. ECF 1 ¶ 19. There is no medical record of this visit, but records show she had referred him for a chest x-ray that was done on August 23, 2023, he had an EKG on September 11, 2023, and Dr. Marthakis ordered a chest CT that was done on September 21, 2023. ECF 1-1 at 74, 96, and 100. The complaint does not plausibly allege Dr. Marthakis was deliberately indifferent.

Mr. Bean alleges Dr. Marthakis was deliberately indifferent on September 14, 2023, when she continued him on several medications which he believes help his heart but make it difficult for him to breathe. ECF 1 ¶ 20. He also alleges she was deliberately indifferent for not treating his chest pain. *Id*. Medical records show he said the medication "brings down the 'inflammation in and around my heart.'" ECF 1-1 at 97. Dr. Marthakis

7

did continue him on those medications. *Id*. at 99. She also noted extensive testing had not yielded a diagnosis, that he was schedule for a chest CT, and that she discussed his case with Psychiatry/Dr. Martin. *Id*. A psychological evaluation had been conducted only days before this visit (on September 8, 2023) "due to [Mr. Bean] being fixated on having a heart condition with no evidence suggesting this." *Id*. at 87.

> Patient said he has difficulty breathing and claimed that he was out of breath walking to writer's office and was out of breath right now. He also said he consistently has chest pain. He described his symptoms as "overwhelming" and "debilitating." Patient stated that he has to "remind [him]self to breathe" and that he "wakes up suffocating." He did not present with any signs of trouble breathing nor pain/discomfort (no hyperventilating, no body clutching, no facial grimacing/wincing, no gasping, speech rate/tone/volume was [within normal limits]). He was respectful to writer but presented as somewhat smug.

ECF 1-1 at 87 (brackets omitted). The complaint does not plausibly allege Dr. Marthakis was deliberately indifferent to his chest pain or the impact of his medication on his breathing.

Mr. Bean saw Dr. Marthakis on October 4, 2023, to discuss his Chest CT. ECF 1-1 at 116. She ordered that CT in response to his complaints of shortness of breath. *Id*. at 100. She told him the results indicated he had mild emphysema. ECF 1 ¶ 21. "Emphysema is a type of COPD (chronic obstructive pulmonary disease). COPD is a group of lung diseases that make it hard to breathe and get worse over time." *Emphysema*, National Library of Medicine.[7] The medical records show Dr. Marthakis told Mr. Bean he had mild COPD. ECF 1-1 at 117. Mr. Bean alleges he "was coughing really bad." ECF 1 ¶ 21. The

---

[7] *See* https://medlineplus.gov/emphysema.html.

medical records show he began coughing after "he did peak flows." ECF 1-1 at 116. Peak flows are done with a peak flow meter which "can tell you and your health care provider how well you blow air out of your lungs." *How to Use Your Peak Flow Meter*, National Library of Medicine.[8] The peak flow test required Mr. Bean to "[b]low out as hard and fast as [he could] in a single blow" and to repeat this several times. *Id*. This testing monitored Mr. Bean's shortness of breath.

Mr. Bean complained that the problem was with his heart and not his lungs. ECF 1 ¶ 21. He alleges Dr. Marthakis was deliberately indifferent On October 4, 2023, for not ordering a heart CT, for not treating his "pulse being stuck in a permanent state of tachycardia," for not addressing his feeling of suffocation, and for not ordering another echocardiogram. *Id*. He alleges she was deliberately indifferent for ordering nurses to not give him an EKG and to place him in a medical holding cell when he was waiting to be returned to his housing unit from medical. *Id*. ¶ 22.

The medical records attached to the complaint demonstrate Dr. Marthakis was not deliberately indifferent. The echocardiogram performed two months earlier did not show a significant problem with his heart. *See* ECF 1-1 at 71. She was testing and monitoring his lung problems which the Chest CT confirmed. "Tachycardia is the medical term for a heart rate that is faster than 100 beats per minute." *Tachycardia*, Yale Medicine.[9] Tachycardia is not always abnormal. *Id*. Over the prior fourteen months before this visit,

---

[8] *See* https://medlineplus.gov/ency/patientinstructions/000043.htm.

[9] *See* https://www.yalemedicine.org/conditions/tachycardia.

Mr. Bean's pulse rate was recorded at least twenty-six times. ECF 1-1 at 1, 4, 9, 15, 22, 27, 27, 29, 44, 46, 48, 53, 55, 58, 60, 61, 66, 68, 70, 72, 76, 82, 90, 96, 98, 103, and 108. On only four prior occasions was his pulse above 100. ECF 66, 82, 90, and 96. His pulse was not "stuck in a permanent state of tachycardia" as he alleges. Nevertheless, Dr. Marthakis ordered monitoring of his pulse and blood tests. ECF 1-1 at 118-19.

Mr. Bean alleges Dr. Marthakis was deliberately indifferent by refusing to allow him to see specialists outside of the prison. ECF 1 ¶ 23. Mr. Bean was seen by Meridian Radiology on September 7, 2022; December 8, 2022; August 8, 2023; and August 23, 2023. ECF 1-1 at 12, 25, 71, and 74. He was seen by Franciscan Health on September 21, 2023. *Id.* at 100. Prisoners are "not entitled to demand specific care[, nor are they] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "[M]edical professionals are not required to provide 'proper' medical treatment to prisoners, but rather they must provide medical treatment that reflects 'professional judgment, practice, or standards.'" *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). "[A] constitutional violation exists only if no minimally competent professional would have so responded under those circumstances." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (citations and quotations omitted). This complaint does not plausibly allege that Dr. Marthakis was deliberately indifferent and the claims against her will be dismissed.

B. *Kimberley Pflughaupt, DNP (Doctorate of Nursing Practice).*

DNP Pflughaupt was one of the previously sued defendants whom the court found Mr. Bean did not state a claim based on events through February 5, 2023. Because

his prior lawsuit was dismissed without prejudice the court will review all the allegations against DNP Pflughaupt.

On January 13, 2023, DNP Pflughaupt saw Mr. Bean for chest pain. ECF 1-1 at 29. On January 24, 2023, she requested he be sent for an outside cardiology evaluation. *Id*. at 33. The cardiology referral was denied by Dr. Wilks who recommended "an exercise stress echo." *Id*. at 36. On January 31, 2023, she requested a stress echo test. *Id*. at 37. Mr. Bean alleges she was deliberately indifferent to have requested a stress echo because she originally requested a cardiology evaluation. ECF 1 ¶¶ 23-24. The cardiology evaluation had been denied. It was not deliberately indifferent for DNP Pflughaupt to follow Dr. Wilks' recommendation and refer him for a stress echo test to continue to evaluate his condition.

Mr. Bean alleges DNP Pflughaupt was deliberately indifferent on July 7, 2023, because she did not request that he be seen by a cardiologist. ECF 1 ¶ 26. As noted, her prior request was denied. *See* ECF 1-1 at 36. The complaint does not allege facts from which it can be plausibly inferred that she was deliberately indifferent to have not tried again on that date. Mr. Bean also alleges she was deliberately indifferent because she reduced his prescription for Crestor. Medical records show he was taking 10mg on January 31, 2023. *Id*. at 38. On July 18, 2023, they show he was taking 5mg. *Id*. at 45. It is unclear why his dosage was reduced, but the complaint does not plausibly allege facts showing the reduction was outside the range of professional judgment. Moreover, the complaint does not allege Mr. Bean suffered any injury because of this reduction.

Mr. Bean alleges DNP Pflughaupt was deliberately indifferent on July 21, 2023, when she prescribed him Mobic (the generic version is called meloxicam) in response to his complaints of chest pain and did not refer him for a mental health exam though she told him his symptoms were psychological. ECF 1 ¶ 27. "Meloxicam is in a class of medications called nonsteroidal anti-inflammatory drugs (NSAIDs). It works by stopping the body's production of a substance that causes pain, fever, and inflammation." *Meloxicam*, National Library of Medicine.[10] As for not referring Mr. Bean for a mental health exam, he had a mental health appointment with Dr. Martin only the day before. *See* ECF 1-1 at 47.

On August 24, 2023, Mr. Bean met with DNP Pflughaupt, and she told him a cardiologist had reviewed his test results and recommended a Chest CT. ECF 1-1 at 75. Mr. Bean disbelieves a cardiologist was consulted. ECF 1 ¶ 28. Even assuming DNP Pflughaupt ordered a Chest CT without consulting a cardiologist, doing so was not deliberately indifferent. He says she refused to do more until she had the test results, but working to get a proper diagnosis was not deliberately indifferent and his medical records show he was continued on aspirin, Crestor, and meloxicam. ECF 1-1 at 77.

On September 15, 2023, Mr. Bean alleges he went to medical where he again complained of chest pain and breathing problems. ECF 1 ¶ 29. This was the day after he had seen Dr. Marthakis with the same complaints where she noted that extensive testing had not yielded a diagnosis, that a psychological evaluation found he complained of

---

[10] *See* https://medlineplus.gov/druginfo/meds/a601242.html.

symptoms which were inconsistent with his behavior, and that he was scheduled for a chest CT. ECF 1-1 at 97-99. Mr. Bean alleges DNP Pflughaupt was deliberately indifferent because she told him there was nothing wrong with him. *Id*. This complaint does not plausibly allege that Mr. Bean needed immediate medical treatment, that he suffered any injury because of not receiving immediate treatment, or that DNP Pflughaupt was deliberately indifferent for not providing him with treatment on that day.

On October 9, 2023, Mr. Bean alleges DNP Pflughaupt inaccurately documented his coughing during his visit with her. ECF 1 ¶ 30. The medical record shows she indicated he was "coughing a lot while in the office." ECF 1-1 at 136. Medical records show also noted his coughing was "forced [with] no obvious distress" and "when patient left office and was out in hall cough was much less significant only coughed a couple of times." ECF 1-1 at 136. Even if her notes were inaccurate descriptions of his coughing, the complaint does not plausibly show she was deliberately indifferent because she also prescribed him an "albuterol inhaler" to be used as needed. "Albuterol is used to prevent and treat difficulty breathing, wheezing, shortness of breath, coughing, and chest tightness caused by lung diseases such as asthma and chronic obstructive pulmonary disease (COPD; a group of diseases that affect the lungs and airways)." *Albuterol Oral Inhalation*, National Library of Medicine.[11] ECF 1-1 at 134 and 136.

Mr. Bean alleges DNP Pflughaupt refused to treat his rapid pulse on October 9, 2023. ECF 1 ¶ 30. His pulse was initially measured at 134 beats per minute. ECF 1-1 at

---

[11] *See* https://medlineplus.gov/druginfo/meds/a682145.html.

134. The medical record shows she addressed this by rechecking his pulse after he "calmed down" and it was only 102. *Id*. at 136. The complaint does not plausibly allege she was deliberately indifferent because she monitored his pulse and saw that it dropped when he was not as agitated.

C.  *Advanced Practice Nurse Diane Thews.*

Mr. Bean alleges that Nurse Practitioner Thews refused him treatment for his heart symptoms on May 4, 2023. ECF 1 ¶ 31. The complaint does not explain what symptoms he had on that day, but the medical records show that other providers had previously seen, tested, and treated him with EKGs, blood tests, a chest x-ray, echocardiograms, and medications. *See* ECF 1-1 at 1-40. There is no indication he needed additional immediate treatment by Nurse Practitioner Thews on that date.

Mr. Bean also alleges she told him he would be taken off his anti-depressant medication if he continued to complain of heart related symptoms. Mr. Bean interpreted this as a threat; but, as previously noted, chest pain is a side effect of bupropion (his anti-depressant). *See Bupropion*, National Library of Medicine.[12] Dr. Martin did discontinue this medication for 30 days in July 2023. ECF 1 ¶ 56. This complaint does not plausibly allege Nurse Practitioner Thews was deliberately indifferent when she told him this was a possible course of treatment to address his chest pain.

Mr. Bean alleges Nurse Practitioner Thews refused him treatment for his heart symptoms and difficulty breathing on August 30, 2023. ECF 1 ¶ 32. He alleges she told

---

[12] *See* https://medlineplus.gov/druginfo/meds/a695033.html#side-effects.

him nothing could be done until he had his chest CT and a cardiologist review. *Id*. The complaint does not indicate that Mr. Bean was having a medical emergency that required immediate treatment. Medical records show other providers had seen and tested him in the prior month with EKGs, an echocardiogram, and a chest x-ray. *See* ECF 1-1 at 48-85. A chest CT had been requested and a cardiology consult was planned. *Id*. at 79-80. This complaint does not plausibly allege Nurse Practitioner Thews was deliberately indifferent on August 30, 2023.

Mr. Bean alleges Nurse Practitioner Thews refused to provide him with an echocardiogram or other treatment on September 26, 2023, though he showed her his EKG from September 11, 2023. ECF 1 ¶ 33. That EKG "show[ed] Sinus Tachycardia, otherwise normal ECG." ECF 1-1 at 95. "Sinus tachycardia is a regular cardiac rhythm in which the heart beats faster than normal." *Sinus Tachycardia*, National Library of Medicine.[13] "Tachycardia is the medical term for a heart rate that is faster than 100 beats per minute." *Tachycardia*, Yale Medicine.[14] Mr. Bean's heart rate during the EKG was barely elevated at 105. ECF 1-1 at 96. Five days this incident with Nurse Practitioner Thews, his chest CT indicated he had mild emphysema. *Id*. at 100. The complaint gives no indication Mr. Bean was having a medical emergency when he met with Nurse Practitioner Thews on September 26, 2023, that required immediate medical treatment. Nor does it explain why the EKG results necessitated an echocardiogram or how it was

---

[13] *See* https://www.ncbi.nlm.nih.gov/books/NBK553128/#:~:text=Sinus%20tachycardia%20is%20a%20regular,when%20it%20occurs%20at%20rest.

[14] *See* https://www.yalemedicine.org/conditions/tachycardia.

related to his mild emphysema. This complaint does not plausibly allege Nurse Practitioner Thews was deliberately indifferent on September 26, 2023.

Mr. Bean alleges Nurse Practitioner Thews told his psychiatrist he should be taken off his anti-depressant medication on September 27, 2023. ECF 1 ¶ 33. There is no indication his medication was changed or that he suffered any injury because of this recommendation.

D. *Nurse Practitioner Karen J. Fagan.*

Mr. Bean alleges Nurse Practitioner Fagan was deliberately indifferent when she ordered only an echocardiogram on August 1, 2023. ECF 1 ¶ 34. In response to his complaints of chest pain, Nurse Fagan reviewed his last three EKGs and noted they were all within normal limits. ECF 1-1 at 65. She also reviewed his last blood test results. *Id.* at 67. This complaint does not provide facts showing Nurse Fagan was deliberately indifferent when she ordered only an echocardiogram.

E. *Dr. Wilks.*

Dr. Wilks was one of the previously sued defendants whom the court found Mr. Bean did not state a claim based on events through February 5, 2023. Because his prior lawsuit was dismissed without prejudice the court will review all the allegations against Dr. Wilks.

Mr. Bean alleges Dr. Wilks was deliberately indifferent when she denied a referral to cardiology in January 2023. ECF 1 ¶ 35. The medical records show she did not merely deny the referral at that time—she also asked for information about his family history and suggested he have an exercise stress echo test. ECF 1-1 at 36. Dr. Wilks decision to

not approve the referral request of DNP Pflughaupt is insufficient to demonstrate that she was deliberately indifferent because "evidence that some medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim." *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). This complaint does not plausibly allege Dr. Wilks was deliberately indifferent when she asked for additional information and testing.

Mr. Bean alleges Dr. Wilks was deliberately indifferent when she did not respond to a letter he mailed to her on March 24, 2024, because she did not "take any action to ensure that Plaintiff received proper medical care." ECF 1 ¶ 36. The medical records show that from January to August 2023, Mr. Bean received a stress echo test, three EKGs, an echocardiogram, and a chest x-ray. ECF 1-1 at 40, 48, 53, 70, 71, and 74. In August 2023, a cardiologist reviewed the test results "and determined that no further cardiac work up was needed." *Id*. at 74. The complaint does not plausibly allege Dr. Wilks was deliberately indifferent. Moreover, "only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). [P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "[P]rison officials who reject [or fail to respond to] prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017).

F.  *Dr. Stephanie Riley.*

Mr. Bean alleges Dr. Stephanie Riley (or whoever was the Regional Director) was deliberately indifferent for not responding to letters he mailed on February 16, 2023, and

March 24, 2023. ECF 1 ¶¶ 37 and 38. These letters were similar to the one he mailed to Dr. Wilks. For the reasons previously explained, the complaint does not plausibly allege Dr. Riley (or whoever was the Regional Director) was deliberately indifferent for not responding to Mr. Bean's letters.

Mr. Bean alleges Dr. Riley was deliberately indifferent on or around October 5, 2023, when she recommended he get medical treatment for COPD without having examined him. ECF 1 ¶ 39. This was not deliberately indifferent because his Chest CT on September 21, 2023, showed he had emphysema which is a type of COPD. *See* ECF 1-1 at 100 and *Emphysema*, National Library of Medicine.[15] He alleges she should have approved the Offsite Pulmonary Function Test requested by DNP Pflughaupt on September 29, 2023. *Id*. "Pulmonary function tests are a group of tests that measure breathing and how well the lungs are functioning." *Pulmonary Function Tests*, National Library of Medicine.[16] Because the Chest CT had already shown that he had emphysema, the complaint does not plausibly allege that Dr. Riley was deliberately indifferent when she recommended COPD treatment rather than additional testing.

G. *Dr. Chistina Chico and Unknown Others.*

Mr. Bean alleges Dr. Christina Chico and other unknown persons conspired to liable and slander him. ECF 1 ¶ 40-43. He alleges Dr. Chico did liable and slander him. *Id*. Perhaps because he knows these claims cannot be brought under 28 U.S.C. § 1983, Mr.

---

[15] *See* https://medlineplus.gov/emphysema.html.

[16] *See* https://medlineplus.gov/ency/article/003853.htm.

Bean presents them as state law claims. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) ("interest in reputation . . . is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law."). District courts have supplemental jurisdiction over state claims "in any civil action of which the district courts have original jurisdiction[.]" 28 U.S.C. § 1367(a). As explained in this opinion, this complaint does not state a federal claim. "Ordinarily, when a district court dismisses the federal claims conferring original jurisdiction prior to trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. 1367(c)." *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010). Such is the case here. This court will not retain supplemental jurisdiction over these state court claims.

H. *Registered Nurse Tiffany Turner.*

Mr. Bean alleges Registered Nurse Tiffany Turner was deliberately indifferent on July 20, 2023, because she followed the orders of Dr. Marthakis and refused to provide him with medical treatment. ECF 1 ¶ 44. Medical records show Mr. Bean was found unresponsive on the floor, but was able to get up and walk to medical. ECF 1-1 at 47. He complained of chest pain, but his breathing was even and nonlabored. *Id*. His walk was steady and strong. *Id*. Nurse Turner took his vitals and blood glucose levels—all of which were normal. *Id*. at 46-47. Nurse Turner consulted with Dr. Marthakis who told her Mr. Bean needed to see Dr. Martin. Nurse Turner verified that he had an appointment with Dr. Martin later that day. There is no indication Mr. Bean had an emergency medical problem or that Nurse Turner acted outside the scope of accepted medical practice and judgment.

Mr. Bean alleges Nurse Tiffany Turner was deliberately indifferent on July 28, 2023, because she did not give him an EKG test. ECF 1 ¶ 45. He alleges also refused him an EKG on August 10, 2023. *Id*. at ¶ 46. Medical records show Mr. Bean saw Nurse Tiffany for chest pain on July 28, 2023. ECF 1-1 at 61. She took his vitals signs, which were normal. *Id*. She noted he was oriented and his skin was warm; his lungs were clear; his heart rate was regular and sounded normal; his breathing was even and unlabored. *Id*. at 62-63. Mr. Bean yelled at Nurse Turner and demanded he be sent to an outside medical facility. *Id*. at 63. When he refused to stop yelling, he was removed by guards. *Id*. There is no indication Mr. Bean needed yet another EKG on July 28, 2023, or that he suffered any injury because he did not get one that day. Only days before, he had an EKG on July 26 and one before that on July 25. ECF 1-1 at 48 and 53. The complaint does not show Mr. Bean needed another one on July 28, 2023. Again, prisoners aren't "entitled to demand specific care[, nor are they] entitled to the best care possible." *Forbes*, 112 F.3d at 267.

I. *Registered Nurse Jacqueline Monaco.*

Mr. Bean alleges Registered Nurse Jacqueline Monaco was deliberately indifferent to his complaints of chest pain when she told him on July 17, 2023, that he would not get a cardiologist consultation. ECF 1 ¶ 47. She was correct that he had been denied a cardiologist consultation months earlier and there is no indication he had yet been approved for a cardiologist referral. *See* ECF 101 at 36. But the next month, a cardiologist did review his case. *Id*. at 75. That cardiologist and test results from several EKGs, a chest echocardiogram, and Chest X-rays found he did not have a serious heart problem. ECF 48, 53, 70, 71, 74, and 75. It is unclear what treatment Mr. Bean believes Nurse Monaco

should have provided on July 17, 2023, but the complaint does not plausibly allege that she was deliberately indifferent—or that he suffered any injury because of a lack of treatment being provided during that visit.

Mr. Bean alleges Nurse Monaco was deliberately indifferent because she refused to give him an EKG on October 8, 2023, when his heart rate was 101. ECF 1 ¶ 48. Medical records show that in addition to his pulse, she took his temperature, blood pressure, and respiration. ECF 1-1 at 131. She listened to his lungs and noted he was alert with a regular, normal-sounding heartbeat. *Id.* at 132. "Tachycardia is the medical term for a heart rate that is faster than 100 beats per minute." *Tachycardia*, Yale Medicine.[17] It can be caused by anxiety and is not always abnormal. *Id.* Mr. Bean had recently been cleared by a cardiologist and diagnosed with mild emphysema. ECF 1-1 at 75 and 100. Given his medical history and that his heart rate was the slowest possible tachycardia, the complaint does not plausibly allege that Nurse Monaco was deliberately indifferent to have decided Mr. Bean did not need another EKG.

J.  *Registered Nurse Teagan Nelson.*

Mr. Bean alleges Nurse Nelson was deliberately indifferent on July 18, 2023, when he complained of chest pain and dizziness. ECF 1 ¶ 49. Medical records show she took his vital signs and noted his EKG was within normal limits. ECF 1-1 at 44-45. Mr. Bean argues he had bradycardia because his pulse was only 52 beats per minute. "Bradycardia is a slow heart rate [with] fewer than 60 times a minute[, but a] slow heart rate isn't always

---

[17] *See* https://www.yalemedicine.org/conditions/tachycardia.

a concern." *Bradycardia*, Mayo Clinic (phonetic spelling omitted).[18] It is unclear what treatment Mr. Bean believes should have been administered, but the complaint does not plausibly allege that Nurse Nelson was deliberately indifferent when she scheduled him for follow up visit based on his symptoms. *See* ECF 1-1 at 45.

K.  *Registered Nurse Roxanne Liston.*

Mr. Bean alleges Nurse Liston was deliberately indifferent to his complaints of chest pain and dizziness on August 9, 2023. ECF 1 ¶ 50. Medical records show she took his vital signs and performed an EKG. ECF 1-1 at 68-69. Mr. Bean believed he had fluid in his pericardial sac. The chest echocardiogram performed the day before showed he did not. *Id*. at 71. Nurse Liston did not yet have those test results, but the complaint does not plausibly allege she was deliberately indifferent to have him wait for them in his housing unit since he was able to walk without assistance.

Mr. Bean alleges Nurse Liston was deliberately indifferent when he was brought to medical on September 11, 2023. ECF 1 at 51. Medical records show he was found unconscious after he fell in his cell, but he was walking when he arrived in medical. ECF 1-1 at 93-94. Nurse Liston took his vital signs and examined him head to toe. *Id*. at 90-94. He had a "bump" on his forehead, but the rest of his body was uninjured, and his pupils were equal and reactive to light. *Id*. at 91-94. Mr. Bean alleges Nurse Liston was deliberately indifferent because she knew he had elevated blood pressure and heart rate. Nurse Liston gave him an EKG which showed he was normal other than having sinus

---

[18] *See* https://www.mayoclinic.org/diseases-conditions/bradycardia/symptoms-causes/syc-20355474.

tachycardia. *Id*. at 95-96. Sinus tachycardia is "a common condition that happens sometimes in response to stressful situations." *Sinus Tachycardia*, Cleveland Clinic.[19] This complaint does not plausibly allege Nurse Liston was deliberately indifferent or that Mr. Bean suffered any injury because of her treatment decisions.

L.  *Registered Nurse Betty Boggs.*

Mr. Bean alleges Registered Nurse Betty Boggs was deliberately indifferent to his complaints of chest pain on July 27, 2023. ECF 1 at 52. There are four nurse visit records for that day; only the last visit was with Nurse Boggs. ECF 1-1 at 58-59. The first three visits were with another nurse who saw him at the nurses' station beginning at 3:54 pm. *Id*. at 49. That nurse performed an EKG and found "Sinus Bradycardia with sinus Arrhythmia Otherwise Normal ECG" *Id*. at 52. Nurse Practitioner Fagan directed that he be given another EKG in four and a half hours. *Id*. Mr. Bean did not want to wait, and declined to sign a refusal of care form. *Id*. Two hours later (and again two hours after that), the nurse noted he remained in the holding cell with unlabored breathing and without complaints of chest pain. *Id*. at 54 and 56. Nurse Boggs saw Mr. Bean at 7:30 pm and reported he was alert and oriented with a steady walk. *Id*. at 59. He was not holding his chest and his breathing was even and unlabored. *Id*. Another EKG was performed, and the results were the same. Mr. Bean alleges Nurse Boggs was deliberately in different, but he does not explain what he believes she should have done to treat him nor how he was injured when she discharged him after the second EKG. Sinus arrhythmia "is a

---

[19] *See* https://my.clevelandclinic.org/health/diseases/23210-sinus-tachycardia.

common rhythm variation." *Sinus Arrhythmia*, National Library of Medicine.[20] "Typically its presence is an indicator of good cardiovascular health." *Id*. Sinus bradycardia meant his heart was beating slower than normal, but his heart rate of 56 was only slightly slower than the 60 beats at the low end of the normal range. *See Bradycardia*, Mayo Clinic.[21] The next morning, his pulse was 86 beats per minute. ECF 1-1 at 61. The complaint does not plausibly allege Nurse Boggs was deliberately indifferent on July 27, 2023.

M. *Warden Ron Neal.*

Mr. Bean alleges Warden Neal was deliberately indifferent to his need for medical treatment because he did not send him to a cardiologist after they spoke on August 22, 2023. ECF 1 ¶ 53. As discussed above, Mr. Bean was receiving extensive (and constitutionally adequate) medical care when he spoke to Warden Neal – including a review of his case by a cardiologist that same month. *See* ECF 1-1 at 75. This complaint does not state a claim against Warden Neal.

N. *Retaliation Claims.*

Mr. Bean alleges several defendants retaliated against him for speaking and writing about the symptoms he was having. ECF 1 ¶ 54-59. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a

---

[20] *See* https://www.ncbi.nlm.nih.gov/books/NBK537011/#:~:text=
Sinus%20arrhythmia%20is%20a%20variation,is%20greater%20than%200.12%20seconds.

[21] *See* https://www.mayoclinic.org/diseases-conditions/bradycardia/symptoms-causes/syc-20355474.

motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quotations omitted).

Mr. Bean alleges Nurse Practitioner Thews retaliated by threatening to discontinue his anti-depressant medication (bupropion) and Dr. Marthakis retaliated by having Dr. Martin take him off bupropion for thirty days. ECF 1 ¶¶ 55-56. Mr. Bean argues this was not medically justified because some of his symptoms were not side effects of bupropion. However, several of his key symptoms (chest pain, dizziness, and loss of consciousness) are side effects and/or symptoms of bupropion overdose. *Bupropion*, National Library of Medicine.[22] As discussed, these medical decisions were not deliberately indifferent. The complaint does not plausibly allege that temporarily discontinuing this prescription (or suggesting the same) was retaliatory punishment for his protected speech. Nor does it allege he suffered any injury as a result.

Mr. Bean alleges Nurse Practitioner Thews and Nurses Monaco, Liston, and Irasema A. Hernandez retaliated by placing him "in a filthy, urine-smelling holding area allegedly for 'monitoring' (when no monitoring occurs)." ECF 1 ¶ 57. The complaint explains he was routinely put in the holding cell after his appointments ended "until Plaintiff can be sent back to his cell/housing unit." *Id.* ¶ 22. *See also id.* ¶ 45 ("until the Plaintiff could be brought back to his housing unit"); *id.* ¶¶ 47 and 50 ("until Plaintiff could be brought back to his housing unit"); and *id.* ¶ 51 ("until he was brought back to his housing unit"). The complaint does not plausibly allege these placements were

---

[22] *See* https://medlineplus.gov/druginfo/meds/a695033.html#side-effects.

retaliatory. Rather, it explains they were an administrative process for the movement of inmates. This use of the medical holding cell would not deter an inmate of reasonable fortitude.

Mr. Bean alleges there was one occasion where he was in the medical holding cell for sixteen hours. ECF 1 ¶ 57. Medical records show he was put "in holding cell for observation" on August 29, 2023. ECF 1-1 at 84. Though Mr. Bean asserts he was not monitored, he has not plausibly alleged facts showing the placement or the lack of monitoring on that one day was in retaliation for his talking about his symptoms.

Mr. Bean asserts there was one time when he was dissuaded from seeking medical attention because he expected to be placed in the holding cell before returning to his housing unit. ECF 1 ¶ 57. Though he emphasizes the holding cell as the reason he did not seek medical treatment on September 11, 2023, an inmate of reasonable fortitude would not be dissuaded from seeking medical treatment merely because he would have to transfer through the medical holding cell before returning to his housing unit. *See Douglas v. Reeves*, 964 F.3d 643, 648 (7th Cir. 2020) ("Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse.").

O. *Dr. Kristen Dauss.*

Mr. Bean asks to proceed against Dr. Dauss for injunctive relief to obtain specialized medical treatment. As explained in this opinion, the complaint does not allege facts from which it can be plausibly inferred that Mr. Bean is not already receiving

constitutionally adequate medical treatment. The complaint does not state a claim for injunctive relief against Dr. Dauss or anyone else.

P. *Preliminary Injunction.*

Mr. Bean filed a motion asking for a preliminary injunction requiring that he and his medical records be sent to a cardiologist. ECF 2. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Mr. Bean has no chance of success on the merits of this case because the federal allegations in the complaint do not state a claim.

CONCLUSION

This complaint does not state a claim for which relief can be granted. It is understandable that Mr. Bean is frustrated by ongoing symptoms for which it has been difficult to find a diagnosis and treatment, but his medical records show his healthcare providers have not been deliberately indifferent as they worked to address his medical needs. Given the detail Mr. Bean provided in his complaint and the volume of medical records he attached showing the extensive healthcare he has received, it seems rather unlikely he could file an amended complaint that states a claim, but he will be granted leave to try because "[t]he usual standard in civil cases is to allow defective pleadings to

be corrected, especially in early stages, at least where amendment would not be futile."

*Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Mr. Bean is not required to

file an amended complaint, but if he decides to do so, he needs to write this cause number

on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his

law library. He needs to write the word "Amended" on the first page above the title

"Prisoner Complaint." He needs to complete the form by alleging facts which are based

on (and consistent with) the events described in this complaint.

For these reasons, the court:

(1) DENIES the preliminary injunction motion (ECF 2);

(2) GRANTS Joshua Bean until **July 31, 2024**, to file an amended complaint; and

(3) CAUTIONS Joshua Bean if he does not respond by the deadline, this case will

be dismissed without further notice.

SO ORDERED.

June 27, 2024                                              *s/ Damon R. Leichty*
                                                          Judge, United States District Court

28